IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RONALD ROTH | ) | CASE NO. |
| 121 Northeast Street | ) | |
| PO box 412 | ) | JUDGE: |
| Bradner, Ohio 43406 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| ROPPE CORPORATION | ) | |
| c/o A.G.C. CO. | ) | **JURY DEMAND ENDORSED** |
| Statutory Agent | ) | **HEREIN** |
| 127 Public Square Ste. 2000 | ) | |
| Cleveland, Ohio 44114 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Ronald Roth, by and through undersigned counsel, as his Complaint against the

Defendant, states and avers the following:

**PARTIES**

1. Roth is a resident of the city of Bradner, county of Wood, state of Ohio.

2. Defendant is a domestic corporation with its principal place of business located at 1602 N
   Union St., Fostoria, Ohio 44830.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Roth is
   alleging federal law claims regarding the deprivation of Roth's rights under the Americans
   with Disabilities Act of 1990 as amended 42 U.S.C. § 12101 *et seq*. ("ADA").

4. This Court has supplemental jurisdiction over Roth's state law claims pursuant to 28 U.S.C.
   § 1367, as Roth's state law claims are so closely related to his federal law claims that they
   form part of the same case or controversy under Article III of the United States Constitution.

5.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

6.   All material events alleged in this Complaint occurred in Seneca County.

7.   Within 300 days of the conduct alleged below, Roth filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC"), Charge No. 532-2021-01194 against Defendant.

8.   On or about March 9, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Roth regarding the Charge of Discrimination.

9.   Roth received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

10.  Roth filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

11.  Roth has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

12.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## **FACTS**

13.  Defendant manufacturers rubber and vinyl flooring products.

14.  Defendant hired Roth as a splitter operator on or about March 18, 2018.

15.  As a result of a prior work injury, Roth suffered severely limited shoulder mobility which was accompanied by occasional pain ("Shoulder Injury").

16.  Roth's Shoulder Injury affects his muscular-skeletal system.

17.  Roth's Shoulder Injury is a physiological disability.

18. As a result of the occasional pain and limited mobility from his Shoulder Injury, Roth's Shoulder Injury impacts one or more of his major life activities, including working.

19. Roth has a record of his Shoulder Injury.

20. Despite his Shoulder Injury, Roth was able to perform the essential functions of his job.

21. As a result of suffering from his Shoulder Injury, Roth is and was considered disabled within the meaning of O.R.C § 4112.01(A)(13).

22. Roth has diagnosed Dyslexia ("Dyslexia").

23. Roth's Dyslexia affects his neurological system.

24. Roth's Dyslexia is a cognative disability.

25. Roth's Dyslexia impacts one or more of his major life activities, including working.

26. Roth has a record of his Dyslexia.

27. Despite his Dyslexia, Roth was able to perform the essential functions of his job.

28. As a result of suffering from his Dyslexia, Roth is and was considered disabled within the meaning of O.R.C § 4112.01(A)(13).

29. In the alternative, Defendant perceived Roth as being disabled.

30. In the alternative, the Defendant perceived that Roth's Shoulder Injury and Dyslexia constituted physical and/or cognitive impairments.

31. In the alternative, Defendant perceived Roth's disabilities to substantially impair one or more of his major life activities, including working.

32. Despite his actual or perceived disabling conditions, Roth was still able to perform the essential functions of his job.

33.  Roth disclosed his disabilities to Linsey Shackleford, his supervisor at the time, after he was initially hired, informing Shackleford that he was unable to work a mill position due to his Shoulder Injury ("Disclosure").

34.  Upon information and belief, Shackleford had a duty to report Roth's Disclosure to Defendant.

35.  Upon information and belief, Shackelford did report Roth's Disclosure to Defendant.

36.  Defendant has knowledge of Roth's disabilities.

37.  Defendant has a record of Roth's disabilities.

38.  Following the Disclosure, Defendant perceived Roth as being disabled.

39.  Following the Disclosure, the Defendant perceived that Roth's medical conditions constituted physical and/or cognitive impairments.

40.  Following the Disclosure, Defendant perceived Roth's disabilities to substantially impair one or more of his major life activities, including working.

41.  Despite his actual or perceived disabling conditions, Roth was still able to perform the essential functions of his job.

42.  On or around August 17, 2020, Defendant moved Roth from the production facility to the warehouse to work as a shipper/receiver.

43.  Due to the move from the production facility to the warehouse, Roth was required to learn Defendant's logistics software.

44.  Roth's Dyslexia impacted the speed at which he could learn the new software.

45.  At all times relevant herein, Defendant employed Angie, Last Name Unknown, as a warehouse manager.

46.  Upon being transferred to the shipper/receiver position, Roth informed Angie about his Dyslexia.

47.  Angie had knowledge of Roth's Dyslexia.

48.  After Roth informed Angie of his Dyslexia, Angie refused to train Roth on Defendant's logistics systems when Roth was transferred to the warehouse.

49.  Roth made multiple requests to Angie and the warehouse staff to formally train him on the software and allow him to take notes in order to learn the logistics process better as note taking helps in mitigating the impact of Roth's Dyslexia ("First Accommodation Request").

50.  Roth's First Accommodation Request was reasonable.

51.  Roth's First Accommodation Request did not cause an undue hardship on Defendant.

52.  Defendant did not determine if Roth's First Accommodation Request would cause an undue hardship.

53.  Defendant has no contemporaneously created documents reflecting any effort to determine if Roth's First Accommodation Request would cause an undue hardship.

54.  After the First Accommodation Request, no one at Defendant engaged in an interactive process to find a reasonable accommodation for Roth's disability.

55.  Defendant violated R.C. 4112.01 *et seq*. when no one at Defendant engaged in an interactive process to find a reasonable accommodation for Roth's disability.

56.  Following Roth's First Accommodation Request, Angie and the rest of the warehouse staff continued to refuse to train Roth on Defendant's computer system.

57.  Following Roth's First Accommodation Request, Angie told Roth that he could not take notes while using Defendant's computer system.

58. Angie did not refuse to train Defendant's non-disabled employees on Defendant's logistic systems.

59. Angie refused to train Roth on Defendant's logistics systems because Roth is disabled.

60. Angie repeatedly rebuked Roth for his mistakes while he was trying to learn Defendant's software.

61. Angie did not rebuke non-disabled employees for mistakes they made while trying to learn Defendant's software.

62. Angie rebuked Roth because Roth is disabled.

63. On or about August 28, 2020, Roth complained to Chris Willington, Defendant's human resources executive, about the lack of training for Defendant's software system and Angie's refusal to accommodate his Dyslexia ("Discrimination Complaint").

64. Upon information and belief, Defendant has a policy against discriminating against an employee based on the employee's disabilities ("Discrimination Policy").

65. Angie's refusal to train Roth and refusal to accommodate Roth's Dyslexia violated Defendant's Discrimination Policy.

66. Alternatively, Defendant permits supervisors to deny training to employees based on their disabilities.

67. The Discrimination Complaint was a complaint of violations of Defendant's Discrimination Policy.

68. Upon information and belief, Defendant has a policy to investigate Complaint of violations of its Discrimination Policy ("Investigation Policy").

69. Pursuant to the Investigation Policy, an investigation should include interviewing the complainant.

70.   Pursuant to the Investigation Policy, an investigation should include interviewing the subject of the complaint.

71.   Pursuant to the Investigation Policy, an investigation should include interviewing the subject of the reported discrimination.

72.   Pursuant to the Investigation Policy, an investigation should include interviewing witnesses to the reported discrimination.

73.   Pursuant to the Investigation Policy, an investigation should include getting a written statement from the complainant.

74.   Pursuant to the Investigation Policy, an investigation should include getting a written statement from the subject of the complaint.

75.   Pursuant to the Investigation Policy, an investigation should include getting a written statement from the subject of the reported discrimination.

76.   In response to Roth's Discrimination Complaint, Defendant did not interview Roth.

77.   In response to Roth's Discrimination Complaint, Defendant did not interview Angie.

78.   In response to Roth's Discrimination Complaint, Defendant did not interview witnesses.

79.   In response to Roth's Discrimination Complaint, Defendant did not get a written statement from Roth.

80.   In response to Roth's Discrimination Complaint, Defendant did not get a written statement from Angie.

81.   In response to Roth's Discrimination Complaint, Defendant did not get a written statement from witnesses.

82.   Defendant did not investigate Roth's Discrimination Complaint.

83. Defendant did not take action to address the conduct Roth complained of in his Discrimination Complaint.

84. Defendant did not discipline Angie at all based on Roth's Discrimination Complaint.

85. By not disciplining Angie at all based on the Discrimination Complaint, Defendant ratified the Angie's conduct.

86. By not disciplining Angie at all based on the Discrimination Complaint, Defendant allowed the Angie's conduct to continue.

87. Ratifying Angie's conduct was an adverse action.

88. Ratifying Angie's conduct was an adverse employment action.

89. On or around August 28, 2020, Roth requested a transfer back to the production facility as an accommodation for his Dyslexia and to get away from Angie ("Second Accommodation Request").

90. Roth's Second Accommodation Request was reasonable.

91. Roth's Second Accommodation Request did not cause an undue hardship on Defendant.

92. Defendant did not determine if Roth's Second Accommodation Request would cause an undue hardship.

93. Defendant have no contemporaneously created documents reflecting any effort to determine if Roth's Second Accommodation Request would cause an undue hardship.

94. In early September 2020, Willington and Roth discussed moving Roth to a position on a 72-inch press as an accommodation ("September Discussion").

95. Roth told Willington that he would accept a new work assignment on the 72-inch press.

96. During the September Discussion, Roth disclosed to Willington that when he had first began working for Defendant, he had been assigned to the mill position and that working in that position agitated his Shoulder Injury. ("Disclosure to Willington").

97. Following Roth's Disclosure to Willington, Willington perceived Roth as being disabled.

98. Following Roth's Disclosure to Willington, Willington perceived that Roth's Shoulder Injury constituted a physical impairments.

99. Following Roth's Disclosure to Willington, Willington perceived Roth's disabilities to substantially impair one or more of his major life activities, including working.

100. Following Roth's Disclosure to Willington, Willington began investigating Roth's employment.

101. While investigating Roth's employment, Willington asked Roth's former supervisors and coworkers about Roth's physical and mental limitations.

102. Roth's former supervisors and coworkers told Roth that Willington was asking about his limitations.

103. After Willington asked Roth's former supervisors and coworkers about Roth's limitations, Willington informed Roth that Defendant would not move Roth back to the production floor.

104. Defendant refused to move Roth back to the production floor because Defendant perceived that Roth's disabilities prevented him from working.

105. At all times relevant herein, Roth was fully capable of returning to the production floor.

106. Defendant's refusal to return Roth to the production floor was an adverse action.

107. Defendant's refusal to return Roth to the production floor was an adverse employment action.

108. On or about September 14, 2020, Willington and Doug Michelson, Defendant's plant manager, informed Roth that Defendant were placing Roth on unpaid leave.

109.  On or about September 14, 2020, Willington and Doug Michelson, Defendant's plant manager, told Roth that Defendant were placing him on unpaid leave because he was a "danger to the plant" because his Dyslexia impacted his ability to use computers.

110.  Willington and Michelson's statement that they were placing him on unpaid leave because, due to his Dyslexia, Roth was a "danger to the plant" is an admission that Defendant's were placing Roth on unpaid leave due to his disability.

111.  Roth's disabilities had never caused harm or created a risk of harm to Defendant's employees.

112.  On or about September 17, 2020, Willington informed Roth that Defendant were terminating his employment with Defendant, due to alleged performance issues in the warehouse.

113.  Upon information and belief, Defendant has a progressive disciplinary policy ("Discipline Policy").

114.  Upon information and belief, Defendant's Discipline Policy calls for escalating levels of discipline for infractions, beginning with a verbal warning, followed by a written warning, and ultimately leading up to termination.

115.  Defendant did not issue Roth a verbal warning for performance issues, in accordance with the Discipline Policy.

116.  Defendant did not issue Roth a written warning for performance issues, in accordance with the Discipline Policy.

117.  Defendant did not issue Roth a final written warning for performance issues, in accordance with the Discipline Policy.

118.  By terminating Roth without following its Discipline Policy, Defendant violated its Discipline Policy.

119. Defendant's purported reason for Roth's termination is pretext for disability discrimination.

120. Defendant' did not proffer a legitimate non-discriminatory reason for terminating Roth.

121. Upon information and belief, subsequent to Roth's termination, Defendant hired a non-disabled person to replace Roth.

122. The above facts demonstrate that Defendant engaged in a pattern and practice of disability discrimination.

123. There was a causal connection between Roth's disabilities termination of Roth.

124. As a result of Defendant's actions Roth suffered, and continues to suffer harm.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 12101 *et seq.*

125. Roth restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

126. Roth has Dyslexia.

127. Roth suffers from his Shoulder Injury.

128. Roth's conditions constituted physical and mental impairments.

129. Roth's conditions substantially impaired one or more of his major life activities including working.

130. Roth is disabled.

131. Roth informed Defendant of his disabling conditions.

132. In the alternative, Defendant perceived Roth as being disabled.

133. Defendant perceived Roth's condition to substantially impair one or more of his major life activities including working.

134. Defendant treated Roth less favorably than other similarly-situated employees based on his disabling conditions.

135. Defendant treated Roth less favorably than other similarly-situated employees based on his perceived disabling condition.

136. Roth requested accommodations from Defendant to assist with his disabilities including formal training and reassignment to open positions.

137. Roth's requested accommodations were reasonable.

138. There was an accommodation available that would have been effective and would have not posed an undue hardship to Defendant.

139. Defendant failed to engage in the interactive process of determining whether Roth needed an accommodation.

140. Defendant failed to provide an accommodation.

141. Defendant violated the ADA by failing to provide Roth a reasonable accommodation.

142. On or about September 17, 2020, Defendant terminated Roth's employment without just cause.

143. Defendant terminated Roth's employment based on his disabilities.

144. Defendant terminated Roth's employment based on his perceived disabilities.

145. Defendant violated the ADA when it discharged Roth based on his disabilities.

146. Defendant violated the ADA when it discharged Roth based on his perceived disabilities.

147. Defendant violated the ADA by discriminating against Roth based on his perceived disabling condition.

148. As a result of Defendant' discrimination against Roth in violation of the ADA, Roth has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Roth to injunctive, equitable, and compensatory monetary relief.

149.  As a result of Defendant' discrimination against Roth in violation of the ADA, Roth has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

150.  In its discriminatory actions as alleged above, Defendant acted with malice or reckless indifference to the rights of Roth, thereby entitling Roth to an award of punitive damages.

151.  To remedy the violations of the rights of Roth secured by the ADA, Roth requests that the Court award him the relief demanded below.

## COUNT II: RETALIATORY DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 12101 *et seq.*

152.  Roth restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

153.  As a result of Defendant's discriminatory conduct described above, Roth complained about the disability discrimination he was experiencing.

154.  Subsequent to Roth's reporting of disability discrimination, Defendant refused to return Roth to the production floor.

155.  Subsequent to Roth's reporting of disability discrimination, Defendant suspended Roth.

156.  Subsequent to Roth's reporting of disability discrimination, Defendant terminated Roth.

157.  Defendant's actions were retaliatory in nature based on Roth's opposition to the unlawful discriminatory conduct.

158.  Pursuant to 42 U.S.C. § 12203, it is an unlawful practice to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter …"

159.   As a result of Defendant's retaliation against Roth in violation of 42 U.S.C. § 12203, Roth
       has been denied employment opportunities providing substantial compensation and benefits,
       thereby entitling Roth to injunctive, equitable,  and compensatory monetary relief.

160.   As a result of Defendants' retaliation against Roth in violation of 42 U.S.C. § 12203, Roth
       has suffered mental anguish and emotional distress, including, but not limited to, depression,
       humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and
       emotional pain and suffering.

161.   In their discriminatory actions as alleged above, Defendants acted with malice or reckless
       indifference to the rights of Roth, thereby entitling Roth to an award of punitive damages.

162.   To remedy the violations of the rights of Roth secured by 42 U.S.C. § 12203, Roth requests
       that the Court award him the relief demanded below.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Ronald Roth requests judgment in his favor against Defendants, joint

and severally, and containing the following relief:

(a)   An order directing Defendant to place Roth in the position he would have occupied but for
      Defendants' discriminatory treatment, as well as to take such affirmative action as is
      necessary to ensure that the effects of these unlawful employment practices and other
      unlawful conduct are eliminated and do not continue to affect Roth;

(b)   An award of damages in an amount to be determined at trial, plus prejudgment interest, to
      compensate Roth for all monetary and/or economic damages, including, but not limited to,
      the loss of past and future income, wages, compensation, job security and other benefits of
      employment;

(c)   An award of damages in an amount to be determined at trial, plus prejudgment interest, to
      compensate Roth for all non-monetary and/or compensatory damages, including, but not
      limited to, compensation for his mental anguish and emotional distress, humiliation,
      depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and
      personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Roth for harm to his respective professional and personal reputations and loss of career fulfillment;

(e) An award of damages for any and all other monetary and/or non-monetary losses suffered by Roth in an amount to be determined at trial, plus prejudgment interest;

(f) An award of punitive damages;

(g) An award of costs that Roth has incurred in this action, as well as Roth's reasonable attorneys' fees to the fullest extent permitted by law; and

(h) Awarding such other and further relief that this Court deems necessary and proper

Respectfully submitted,

*/s/ Samuel B. Robb*
Chris P. Wido (0090441)(Trial Counsel)
Samuel B. Robb (0099035)
**The Spitz Law Firm, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email: chris.wido@spitzlawfirm.com
       sam.robb@spitzlawfirm.com

*Attorneys For Plaintiff Ronald Roth*

<u>JURY DEMAND</u>

Plaintiff Ronald Roth demands a trial by jury by the maximum number of jurors permitted.

*/s/ Samuel B. Robb*

Chris P. Wido (0090441)

Samuel B. Robb (0099035)
